

U.S. BANKRUPTCY COURT
NORTHERN DISTRICT OF TEXAS

**ENTERED**

TAWANA C. MARSHALL, CLERK
THE DATE OF ENTRY IS
ON THE COURT'S DOCKET



**The following constitutes the ruling of the court and has the force and effect therein described.**

_____
**United States Bankruptcy Judge**

Signed March 21, 2013

---

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| JATIQUIA CASH, | § | CASE NO. 12-30424-SGJ-13 |
| | § | |
| D E B T O R. | § | |

**MEMORANDUM OPINION AND ORDER: (A) DECLARING THAT WANDA HARLAN HAS COMMITTED ACTS IN VIOLATION OF 11 U.S.C. § 110, THE BANKRUPTCY PETITION PREPARER STATUTE; (B) REQUIRING FORFEITURE OF FEES, PAYMENT OF FINES, AND ENJOINING FURTHER BANKRUPTCY PETITION PREPARER ACTIVITY; (C) ADDRESSING ATTORNEY STEVE TIEMANN'S VIOLATION OF THE TEXAS DISCIPLINARY RULES OF PROFESSIONAL CONDUCT; AND (D) ADDRESSING RELATED CONDUCT OF CEDRIC BROOKS AND AMERIDREAM EDUCATIONAL CONCEPTS**

**I. INTRODUCTION.**

This Memorandum Opinion and Order addresses improper bankruptcy petition preparer activity, in violation of Section 110 of the Bankruptcy Code (hereinafter, the "Bankruptcy Petition Preparer Statute"). This constitutes the court's findings of fact and conclusions of law with regard to the contested matter

described below. *See* Fed. R. Bankr. P. 7052(a)(1) and 9014(c).
Any finding of fact more appropriately characterized as a
conclusion of law should be regarded as such, and *vice versa*.

Bankruptcy subject matter jurisdiction exists in this
contested matter, pursuant to 28 U.S.C. § 1334(b). This
bankruptcy court has authority to exercise such subject matter
jurisdiction, pursuant to 28 U.S.C. § 157(a) and the Standing
Order of Reference of Bankruptcy Cases and Proceedings (Misc.
Rule No. 33), for the Northern District of Texas, dated August 3,
1984. "Core" matters are involved in this matter, pursuant to 28
U.S.C. § 157(b)(2)(A) and (O). The bankruptcy court believes
that it has Constitutional authority to issue final orders in
this matter.

**II. FINDINGS OF FACT.**

**A.   The Story of How "Bankruptcy Petition Preparer" Activity
      First Surfaced in this Case.**

On January 24, 2012, Jatiquia Cash (the "Debtor" or "Ms.
Cash") filed the above-referenced Chapter 13 bankruptcy case.
Ms. Cash filed her bankruptcy case on a *pro se* basis, according
to her bankruptcy paperwork. No lawyer was listed or signed the
bankruptcy petition, and no bankruptcy petition preparer was
disclosed or signed the bankruptcy petition. Seventeen days
after Ms. Cash filed her bankruptcy case, the bankruptcy court
entered an Order Dismissing Case for the Debtor's failure to file
the necessary bankruptcy paperwork (*e.g.,* Schedules, Statement of

-2-

Financial Affairs, *etc.*) [DE #14].[1]  Two days later, the Debtor filed a pleading entitled Motion to Reinstate and Request for Expedited Hearing (the "Motion to Reinstate") [DE #16].  The Motion to Reinstate essentially asked the court to reopen the bankruptcy case and give Ms. Cash more time to submit her necessary bankruptcy paperwork.  The Standing Chapter 13 Trustee (the "Trustee") filed a response to the Motion to Reinstate, simply asking that the bankruptcy court set the matter for hearing.  A hearing was held on March 8, 2012.

Ms. Cash appeared before the bankruptcy court for the March 8, 2012 hearing, along with her mother, Christy Holland ("Ms. Holland").  The Trustee was also present for the hearing.

The bankruptcy court called Ms. Cash to give testimony regarding the Motion to Reinstate, and Ms. Cash credibly testified as follows, with added credible comments from her mother, Ms. Holland (the court also later called Ms. Holland to testify):

> 1.   Ms. Cash and Ms. Holland reside at 138 Horseshoe Bend, Waxahachie, Texas (the "Homestead").  Ms. Cash is 23 years old and works as a packer at a Walgreens Distribution Center. Ms. Cash has a learning disability.  Ms. Cash and her mother are co-owners of the Homestead.  The Homestead was apparently foreclosed upon back in May 2011, but Ms. Cash and her mother currently

---

[1] References to "DE # __" throughout this Memorandum Opinion and Order refer to the record entry number at which a particular pleading appears in the docket maintained by the Bankruptcy Clerk for this case.

remain at the Homestead.

2.    Ms. Cash's uncle, William Cash, suggested that Ms. Cash and Ms. Holland contact an attorney named Steve Tiemann to see if he could assist them in keeping their Homestead.

3.    Ms. Cash and Ms. Holland did contact attorney Steve Tiemann and they met with him at a Starbuck's coffee store in Lancaster, Texas. Steve Tiemann told them to file bankruptcy and to work with a woman named "Wanda" to help them with the bankruptcy paperwork.  Steve Tiemann also told them that he would represent them after they went through bankruptcy.  Steve Tiemann gave them Wanda's phone number.  Ms. Cash and Ms. Holland did not know Wanda's last name.  (After the hearing, the Trustee was able to find out Wanda's last name, which he reported is "Harlan," and the Trustee provided that information to the bankruptcy court's courtroom deputy.)

4.    The bankruptcy court called the Debtor's mother, Ms. Holland, to the stand, after hearing from the Debtor, Ms. Cash.  Ms. Holland credibly testified that she was Ms. Cash's mother and she was not in bankruptcy, but that she and Ms. Cash are both owners of the Homestead and liable on the mortgage associated therewith.  The only creditor listed in Ms. Cash's bankruptcy case is Bank of America.  Ms. Holland stated that she does not understand what is going on and that she and her daughter are just trying to keep their Homestead.

5.    Ms. Holland further testified that she and Ms. Cash first met with Wanda at a Luby's Cafeteria.  Wanda then came to their Homestead to do the bankruptcy paperwork.  Ms. Holland said she paid Wanda $500 in cash on or about January 24, 2012, for helping with the bankruptcy paperwork.  She did not get a receipt.

The court then heard from the Trustee.  The Trustee noted that Ms. Cash's voluntary bankruptcy petition had the Debtor's mother's name listed on the right side, as if she would be a joint-debtor, but that the mother's name had been crossed out

-4-

prior to its filing with the bankruptcy court. The mother's signature had also been marked out on the voluntary petition. The Trustee surmised that Ms. Cash and her mother may have been under the mistaken impression that they could file a bankruptcy case together.

The Trustee then noted that the Motion to Reinstate filed February 24, 2012, is typed and "looks formal" (indeed, it is prepared in proper pleading format—not as one might expect from a *pro se* debtor). The Trustee further pointed out that Ms. Cash's signature does not seem to match the signature on the Motion to Reinstate, and he wondered whether Ms. Holland may have actually signed that document for Ms. Cash. Per Ms. Cash, Wanda prepared the Motion to Reinstate.

The Trustee further stated that he has heard of the woman named "Wanda" in multiple bankruptcy cases, and he actually spoke with her about this case. Wanda told the Trustee that she was working through attorney Steve Tiemann. The Trustee telephoned Steve Tiemann and Steve Tiemann denies that Wanda works for him, or that Wanda is contracted with him. The Trustee's suspicion was that Wanda is being paid to prepare bankruptcy petitions and is not reporting this as required under 11 U.S.C. § 110, the Bankruptcy Petition Preparer Statute.

Through his conversation with Steve Tiemann, it is the Trustee's understanding that Steve Tiemann has been engaged in

-5-

the practice of filing state court litigation to try and set
aside home foreclosure sales.  The Trustee credibly testified
that it was his belief that Steve Tiemann sometimes instructs a
foreclosed-homeowner-client to file a bankruptcy case in order to
delay eviction, which allows time for Steve Tiemann to prepare
and file a state court lawsuit to attempt to set aside the
foreclosure sale.  Then, perhaps, after obtaining a brief respite
from the eviction efforts, by virtue of the automatic stay
imposed by the client's bankruptcy filing, the bankruptcy case is
allowed to be dismissed without opposition by the client-debtor.

     At the conclusion of the March 8, 2012 hearing, the
bankruptcy court strongly urged Ms. Cash and Ms. Holland to hire
a bankruptcy attorney to represent them, so as to understand
their rights and remedies in a bankruptcy case.  The bankruptcy
court ordered that the above-referenced case be reinstated in
order for the bankruptcy court to further inquire and make a
determination about the actions of Mr. Steve Tiemann and Ms.
Wanda Harlan.

     The court next issued a Show Cause Order (hereinafter so
called) on March 30, 2012 [DE # 34], stating that the bankruptcy
court believed it had an obligation to gather more information
and find out if there had been a violation of section 110 of the
Bankruptcy Code, and if so, whether damages, fines, or sanctions
were warranted under section 110(i), or, alternatively, pursuant

-6-

to section 105 of Bankruptcy Code. The court had additional concerns about the possibility of the unauthorized practice of law (or assistance therewith) and violations of the Texas Disciplinary Rules of Professional Conduct. The Show Cause Order was served on Wanda Harlan and Steve Tiemann, and it ordered them to appear before the bankruptcy court on May 1, 2012, at 9:30 a.m., and show cause whether: (a) Wanda Harlan had committed acts in violation of 11 U.S.C. § 110, the Bankruptcy Petition Preparer Statute, or, in the alternative, engaged in the unauthorized practice of law, and, (b) Steve Tiemann had violated the Texas Disciplinary Rules of Professional Conduct.

**B.    Show Cause Hearing.**

The court held a hearing on May 1, 2012. Steve Tiemann appeared for himself and Deborah Morton appeared for the Trustee. Wanda Harlan appeared and Lorenzo Brown appeared as her attorney.

*1.    Steve Tiemann Testimony.*

At the hearing, Steve Tiemann addressed the court first. He represented that he was an attorney licensed in Texas in 1982. Transcript from 5/1/12, p.9, line 17-22. He testified that he had primarily been a real estate lawyer over his years of law practice and, in the last two years, his practice had become "90 percent wrongful foreclosure cases in State Court, Federal Court, and, in one or two instances, in Bankruptcy Court." Transcript from 5/1/12, p.10, lines 1-13. Steve Tiemann went on to testify

-7-

that William Cash (the Debtor's uncle) was referred to him by a
Cedric Brooks who operates an entity known as the Ameridream
Company. He described Ameridream Company as assisting people
relating to wrongful foreclosure. He testified that Cedric
Brooks has referred "probably 20 people to me over the last nine
months." Transcript from 5/1/12, p.10, line 25 through p.11,
line 1. He further testified that Ameridream Company also did
business as Ameridream Educational Concepts. It does business at
an office at LBJ Freeway and Josey Lane in Dallas. Cedric Brooks
is not an attorney.

Steve Tiemann further testified that Wanda Harlan "does not
work for me. She's never worked for me; I've never worked for
her. I've never paid Ms. Harlan any money; she's never paid me
any money. We've never shared an office. We've never shared
expenses. I haven't met Ms. Harlan until right now here this
morning. I've talked with her probably two or three times, maybe
three or four times over the telephone about matters not related
to Ms. Cash and Ms. Holland." Transcript from 5/1/12, p.8, lines
14-21. Steve Tiemann went on to add that "there is no business
relationship, there's never been a business relationship.
There's never been a referral relationship of any kind between me
and Ms. Harlan . . . . I did not refer Ms. Cash and Ms. Holland
to Ms. Harlan." Transcript from 5/1/12, p.8, line 24 through
p.9, line 4. Steve Tiemann likewise testified that he had never

-8-

been paid money by Ameridream or *vice versa*. He did not work for Ameridream and Ameridream did not work for him. Ameridream just referred people to him from time to time.

Steve Tiemann further testified that William Cash had been a client of his, referred by Ameridream. Steve Tiemann had been handling state court litigation (an eviction appeal) for William Cash. William Cash at some point told Steve Tiemann about his niece, Ms. Cash, describing her situation with a foreclosure and eviction, and asking Steve Tiemann if he could help her. Transcript from 5/1/12, pp.19-20.

Steve Tiemann testified he never gave Wanda Harlan's name to William Cash, Ms. Cash, or Ms. Holland. He testified that William Cash called him many days later, a second time, and told Steve Tiemann that Ms. Cash and Ms. Holland had filed bankruptcy by then (on January 24, 2012), but they wanted Steve Tiemann's help to bring a wrongful foreclosure action, and he set up a meeting with them on January 28, 2012 at a Starbucks coffee store in Lancaster, Texas. Only Ms. Holland attended the meeting. Transcript from 5/1/12, p.22, lines 17 through p.23, line 25. She gave Steve Tiemann a $1,100 cashier's check for representation (which he said would cover 60 days of work to "get started and see where it goes" as far as bringing a wrongful foreclosure suit). Transcript from 5/1/12, p.2, lines 1-19. Steve Tiemann said he has never done any material legal work for

Ms. Holland/Ms. Cash because he never got a file/paperwork for them. He was told Ameridream would have a file regarding their Homestead, but he has never gotten it. Steve Tiemann has simply just been trying to stave off eviction outside the scope of their Chapter 13 case. Transcript from 5/1/12, pp.27-29.

Steve Tiemann finally testified that he first learned of Wanda Harlan awhile back when he received a referral from Ameridream to represent a husband and wife named Lorenzo and Gwen Spratt, who needed help with a bankruptcy case and to challenge a foreclosure. He was concerned that he could not really handle their bankruptcy case. He said he was told by Cedric Brooks that he had a paralegal that could help Steve Tiemann out: Wanda Harlan. Transcript from 5/1/12, pp.40-41. But she did not end up helping him on that case. However, Wanda Harlan did end up helping out on a bankruptcy case of a lady named Verna Black (a secretary at the Spratts' church that they apparently officiate). He said that Wanda Harlan was already helping Verna Black by the time he learned of her, and that he had a few conversations on the phone with Wanda Harlan in January [2012] regarding Verna Black and that is the extent of his dealings ever with Wanda Harlan. Transcript from 5/1/12, p.50, lines 3-19.

2. *Wanda Harlan Testimony.*

Wanda Harlan next testified, primarily through direct examination by her attorney, Lorenzo Brown. Ms. Harlan testified

-10-

that she is a self-employed paralegal and that she also works for H&H Tax Service, which is her son's tax service (her son is named Chris Harlan and he is neither a lawyer nor an accountant). Transcript from 5/1/12, p.90, lines 16-22; p.91, lines 2-7. Ms. Harlan previously had a law license but was disbarred in 1997. *Id.* at p.92, lines 1-19. Ms. Harlan formerly worked for an attorney named Charles Shavers, Jr., who also no longer has a law license but has an office at the same location of H&H Tax Service. *Id.* at p.100-103. Ms. Harlan works as a paralegal typing documents for several attorneys including an S. Wesley Newell and a Don O'Bannon. *Id.* at p.104.

Ms. Harlan testified that she came to know Steve Tiemann through Cedric Brooks (the Ameridream fellow); "he [Cedric Brooks] called me and he asked me would I work with an attorney called Steve Tiemann and help with bankruptcy schedules"). Transcript from 5/1/12, p.76, lines 12-14. This happened in the latter part of 2011. *Id.* at line 16.

Ms. Harlan further testified that in the latter part of 2011, "Mr. Tiemann texted me a couple of times, and I did call him back, and we talked. He said he wasn't very good with schedules, didn't have time, and if I would assist and help with the schedules-the bankruptcy schedules." Transcript from 5/1/12, p.76, lines 18-22. "I was told I would be paid $500 for each bankruptcy case." *Id.* at p.76, line 25 through p. 77, line 1.

-11-

Ms. Harlan confirmed she was indeed paid $500 for each bankruptcy case she worked on "and in retrospect-in retrospect the clients probably should not have just given me the money directly, but that's what they were instructed to do." *Id.* at p. 77, lines 3-5.

Ms. Harlan further testified that she did not advertise her services but, rather, all clients "came through, I guess, Steve Tiemann or by way of Ameridream.  But I was told that Steve Tiemann would be the attorney of record, and I would work with him on schedules."  Transcript from 5/1/12, p.77, lines 14-16. When asked why Wanda Harlan did not put her name on the bankruptcy schedules, she said "it was my understanding I was working under the direction of Steve Tiemann.  They knew I was just a paralegal, I don't go to court, I'm just an assistant to the attorney." *Id.* at p. 78, lines 3-6.  When asked how many clients Ms. Harlan prepared paperwork for, she answered five and that she had known none of them before and that she was told Steve Tiemann would represent them in court. *Id.* at p.78, line 7-16.  Ms. Harlan further testified that she had prepared the bankruptcy schedules for (1) the Debtor, Ms. Cash; (2) a Pauline Davis; (3) a Verna Black; (4) Lorenzo and Gwen Spratt (she worked with them on amended/corrected schedules); and (5) Hung Truong (assisted him in a second case he filed). *Id. See also id.* at p.94-96.  Ms. Harlan confirmed she was paid $500 cash for each of

these five clients except only $400 for the Spratts. *Id.* at pp. 108-109.

Ms. Harlan later testified that she had met Cedric Brooks several years ago when she was working for the attorney named Charles Shavers, Jr. Transcript from 5/1/12, p.81, lines 1-12; p. 91, lines 8-14. Recall that Mr. Shavers currently shares office space with Ms. Harlan and her son, but, like Ms. Harlan, is not currently a licensed lawyer. *Id.* at p.91, lines 11-23. Then in the summer or fall of 2011, Cedric Brooks called her about doing some bankruptcy schedules in cases where Steve Tiemann would be attorney of record. *Id.* at p.81, lines 13-24. She also testified that Cedric Brooks had talked to her generally, before ever mentioning Steve Tiemann, and he said that if she would prepare bankruptcy petitions he would pay her $500. *Id.* at p.82, lines 6-13. Ms. Harlan confirmed that she had never met Steve Tiemann before May 1, 2012 in the courtroom at the Show Cause Hearing. But she said she had talked to Steve Tiemann many times (far more times than she had talked to Cedric Brooks). *Id.* at p.84, lines 1-23. She said she talked to Steve Tiemann questioning why they would be filing bankruptcy cases for people **after** foreclosures. *Id.* at p.85, lines 4-21.

Wanda Harlan confirmed that clients always paid her $500 directly. She never was paid by Ameridream or Steve Tiemann. She claimed to not know why Steve Tiemann and Cedric Brooks had

-13-

it set up this way.  *Id.* at p.85, line 22 through p.86, line 13.

**C.  Developments Subsequent to Show Cause Hearing.**

The court was informed that Steve Tiemann surrendered his law license, submitting his resignation from membership in the State Bar of Texas, eight days after the Show Cause Hearing, on May 9, 2012.

**III. CONCLUSIONS OF LAW.**

**A.  Wanda Harlan Has Acted as a Bankruptcy Petition Preparer.**

1.    Section 110(a)(1) of the Bankruptcy Code defines a "bankruptcy petition preparer" as a "person, other than an attorney for the debtor or an employee of such attorney under the direct supervision of such attorney, who prepares for compensation a document for filing."  "Document for filing" means "a petition or any other document prepared for filing by a debtor" in connection with a bankruptcy case.  11 U.S.C. § 110(a)(2).

2.    The totality of the evidence (*i.e.,* the credible testimony of Ms. Cash and Ms. Holland on March 8, 2012, and the testimony—sometimes credible and sometimes evasive—of Steve Tiemann and Wanda Harlan on May 1, 2012) demonstrates that Ms. Harlan falls within the statutory definition of a bankruptcy petition preparer set forth in section 110 of the Bankruptcy Code.  Ms. Harlan prepared the bankruptcy petition and bankruptcy schedules on behalf of the Debtor, Ms. Cash.  Ms. Harlan further

-14-

testified that she has prepared (or assisted in preparing) the
bankruptcy schedules for at least five persons: (1) the Debtor,
Ms. Cash; (2) a Pauline Davis;[2] (3) a Verna Black;[3] (4) Lorenzo
and Gwen Spratt (she worked with them on amended/corrected
schedules);[4] and (5) Hung Truong (assisted him in a second case

_____

[2] The court takes judicial notice of the bankruptcy case of
Pauline Davis, Case No. 12-30254, a Chapter 13 case filed in the
Northern District of Texas, Dallas Division on January 11, 2012, and
dismissed on March 23, 2012. *The case docket reflects that it was
filed on a pro se basis with no Bankruptcy Petition Preparer
disclosed.* The case docket also reflects that attorney Steve Tiemann
appeared in the Pauline Davis case on March 15, 2012, defending a
motion to lift stay, but the case was dismissed 8 days later.

[3] The court takes judicial notice of three bankruptcy cases filed
by Verna Black in the Northern District of Texas, Dallas Division.
First, Case No. 11-35986, a Chapter 13 case filed on September 23,
2011, and dismissed on October 19, 2011. The case docket reflects
that it was filed on a *pro se* basis with no Bankruptcy Petition
Preparer disclosed. There was never any lawyer appearance. Second,
Case No. 11-37369, another Chapter 13 case filed on November 21,
2011, and dismissed on December 1, 2011. The case docket reflects that
it was filed this time by attorney Steve Tiemann. This case was
dismissed before Schedules were ever filed. Third, Case No. 11-38083,
another Chapter 13 case filed on December 27, 2011, and dismissed on
March 1, 2012. *The case docket reflects that the case was filed on a
pro se basis with no Bankruptcy Petition Preparer disclosed.* There
was never any lawyer appearance. The case was dismissed for serial
filing (no debtor opposition).

[4] The court takes judicial notice of three bankruptcy cases filed
by Lorenzo Spratt in the Northern District of Texas, Dallas Division.
First, Lorenzo Spratt, Case No. 09-37390, a Chapter 13 case filed on
November 1, 2009, and dismissed on April 20, 2010. The case docket
reflects that this first case was filed by lawyer John Hopping and was
dismissed for failure to confirm a plan. Second, Case No. 11-36020,
another Chapter 13 case filed on September 26, 2011, and dismissed on
October 18, 2011. The case docket reflects that this case was filed
on a *pro se* basis with no Bankruptcy Petition Preparer disclosed.
There was never any lawyer appearance. This case was dismissed before
Schedules were ever filed. Third, Case No. 11-37783, another Chapter
13 case filed with a joint debtor, Gwendolyn Spratt, on December 6,
2011, and dismissed on September 6, 2012. The docket in this third
case reflects that it was filed by attorney Steve Tiemann. Two sets
of Schedules were filed (the first set was handwritten; then the

he filed).[5] Transcript from 5/1/12 at pp.78-79. *See also id.* at p.94-96. Ms. Harlan is not an attorney (having been disbarred in 1997) and she was not an employee of an attorney under the direct supervision of an attorney. Ms. Harlan testified that she received compensation of $500 cash for each of these five clients except only $400 for the Spratts. *Id.* at pp.108-109. She received the compensation directly from the clients.

3. Ms. Harlan may have believed Steve Tiemann was going to be an attorney in some capacity for the five debtor-clients. And this may very well have been his and Ameridream's intention. And she may very well have talked to Steve Tiemann on various occasions. This does not change the fact that Ms. Harlan (who is admittedly self-employed) prepared bankruptcy documents for clients without supervision by an attorney and took compensation directly from the clients for it. She directly interacted with clients. She was absolutely acting as a bankruptcy petition

_____

second set was typed), **but no Bankruptcy Petition Preparer was disclosed.**

[5] The court takes judicial notice of two bankruptcy cases filed by Hung Truong in the Northern District of Texas, Dallas Division. First, Case No. 11-37580, a Chapter 13 case filed on December 2, 2011, and dismissed on December 22, 2011. The case docket reflects that this first case was filed on a *pro se* basis with no Bankruptcy Petition Preparer disclosed. There was never any lawyer appearance in this case and it was dismissed before Schedules were ever filed. Second, Case No. 12-30331, another Chapter 13 case filed on January 17, 2012, and dismissed on August 20, 2012. **The case docket reflects that this second case was also filed on a pro se with no Bankruptcy Petition Preparer disclosed.** There was never any lawyer appearance in this case either. Schedules were filed, then the case was dismissed for failure to confirm a plan.

preparer.

4.  Congress added section 110 to the Bankruptcy Code in 1994, as a legislative response to perceived abuse of the bankruptcy laws by so called "typing services" which had proliferated.  Section 110 was added to create a set of standards and accompanying penalties to regulate bankruptcy petition preparers.  *In re* Guttierez, 248 B.R. 287, 292 (Bankr. W.D. Tex. 2000).  There was a perception that bankruptcy petition preparers often take advantage of persons who are ignorant of their rights both inside and outside the bankruptcy system.  While it is permissible for a petition preparer to provide services solely limited to typing, there was a perception and concern that far too many bankruptcy petition preparers also attempt to provide legal advice and legal services to debtors.  *Id.*  Congress enacted section 110 precisely **because** bankruptcy petition preparers were attempting to provide legal advice and services which were beyond their knowledge and competence.  H.R. REP. NO. 103-835, AT 56 (1994), *reprinted in* 1994 U.S.C.C.A.N. 3340, 3365. The only service that a bankruptcy petition preparer can safely offer and complete on behalf of a *pro se* debtor after the enactment of section 110 is the "transcription" of dictated or handwritten notes prepared by the debtor prior to the debtor having sought out the petition preparer's service.  *Guttierez,* 248 B.R. at 297-98.

-17-

**B. Wanda Harlan Did Not Comply with Section 110 of the Bankruptcy Code While Acting as a Bankruptcy Petition Preparer.**

5. So what, specifically, does section 110 **require** of a bankruptcy petition preparer and what does it prohibit of a **bankruptcy** petition preparer?

6. Section 110(b) of the Bankruptcy Code **requires** a bankruptcy petition preparer who prepares a document for filing to **sign** the document and **print on the document the preparer's name and address**. Wanda Harlan did not do this in Ms. Cash's case. This court takes judicial notice that Wanda Harlan also did not do it in any of the other of the five cases in which she testified she assisted debtors: (2) a Pauline Davis; (3) a Verna Black; (4) Lorenzo and Gwen Spratt (she worked with them on amended/corrected schedules); and (5) Hung Truong.[6]

7. Additionally, section 110(b)(2) of the Bankruptcy Code **requires** that, prior to accepting any fees or preparing any documents for the debtor, the bankruptcy petition preparer must provide to the debtor a written notice on an official form stating the bankruptcy petition preparer is not an attorney and may not practice law or give legal advice (with examples of what would be legal advice) and such notice must be signed by the debtor and also signed by the bankruptcy petition preparer under

---

[6] *See* footnotes 2-5, *supra*.

penalty of perjury.  This notice must be filed with any document prepared for filing by the bankruptcy petition preparer.  Wanda Harlan did not do this in Ms. Cash's case nor in any of the five cases in which she prepared documents for debtors.[7]

8.  Additionally, section 110(c)(1) of the Bankruptcy Code **requires** a bankruptcy petition preparer who prepares a document for filing to place on the document, after **the preparer's signature**, an **identifying number** that identifies individuals who prepared the document.  Section 110(c)(2) of the Bankruptcy Code states that this number shall be each preparer's social security account number.  Wanda Harlan did not do this in Ms. Cash's case. This court takes judicial notice that Wanda Harlan also did not do it in any of the other five cases in which she testified she assisted debtors.[8]

9.  Section 110(e) of the Bankruptcy Code further **prohibits** a bankruptcy petition preparer from **executing** any document on behalf of a debtor or **providing legal advice** to a potential bankruptcy debtor.  While there is no evidence whether Wanda Harlan executed any document on behalf of any debtor, this court does believe there is compelling evidence that Wanda Harlan provided legal advice to debtors. Preparing bankruptcy documents

---

[7] *See* footnotes 2-5, *supra.*

[8] *See* footnotes 2-5, *supra.*

and giving advice regarding bankruptcy matters of necessity constitutes the practice of law. Bankruptcy documents simply cannot be prepared without having to make legal decisions. The debtor must decide such things as under which chapter of bankruptcy to file, what property to claim as exempt, and how to classify debts. *Guttierez*, 248 B.R. at 295. Even the simplest bankruptcy cases require a familiarity with principles of bankruptcy and state property law which are beyond a layperson's knowledge. *Id.* When the petition preparer makes these choices for the debtor, the petition preparer is practicing law. *Id.*[9]

10. Additionally, Section 110(h)(2) **requires** a bankruptcy petition preparer to file, with a voluntary bankruptcy petition, a declaration under penalty of perjury disclosing any fee received from or on behalf of the debtor within 12 months immediately prior to the filing of the case. Wanda Harlan's fee was not disclosed in the Debtor's case nor in any of the five

---

[9] State law is determinative of what constitutes the unauthorized practice of law. In Texas, the practice of law is defined but not exclusively limited to "preparation of a pleading or other document incident to an action or special proceeding or the management of the action or proceeding on behalf of a client before a judge in court as well as service rendered out of court, including the giving of advice or the rendering of any service requiring the use of legal skill or knowledge, such as preparing a will, contract, or other instrument, the legal effect of which under the facts and conclusions involved must be carefully determined. Tex. Gov't Code Ann. § 81.101(a) (West 2012). Further, this definition is not exclusive and "does not deprive the judicial branch of the power and authority" to determine whether services constitute the "practice of law." Id. at § 81.101(b).

cases in which she prepared documents for debtors.[10]

**C.  Potential Penalties for a Bankruptcy Petition Preparer, Pursuant to Section 110.**

11.  <u>Consequences for Excessive Fees: 11 U.S.C. § 110(h)(3)(A).</u>  First, fees received from or on behalf of a debtor by a bankruptcy petition preparer within 12 months immediately prior to the filing of the case *that are found by the court to be in excess of the value of the services rendered* (or in violation of any rule promulgated by the Supreme Court or guideline prescribed by the Judicial Conference of the United States) may be disallowed by the court and ordered to be immediately turned over to the bankruptcy trustee.  Moreover, a bankruptcy petition preparer shall be fined not more than $500 for each failure to comply with a court order to turn over funds within 30 days of service of such order.  11 U.S.C. § 110(h)(5).

12.  <u>Outright Forfeiture of Fees:  11 U.S.C. § 110(h)(3)(B).</u> Second, *all* fees charged by a bankruptcy petition preparer may be forfeited in any case in which the bankruptcy petition preparer fails to comply with section 110(b), (c), (d), (e), (f), (g) or (h).  As set forth above, Wanda Harlan failed to comply with at least section 110(b)(1) and (2), (c), (e)(2), and (h)(2) with regard to all five debtors she assisted, including Ms. Cash.[11]

---

[10] *See* footnotes 2-5, *supra.*

[11] *See* footnotes 2-5, *supra.*

-21-

***Thus, this court concludes that all the fees charged to her five clients should be forfeited.*** This would be $500 related to Ms. Cash and $500 related to three other debtors (Pauline Davis, Verna Black, and Hung Truong) and $400 for one other debtor (the Spratts). ***In other words, $2,400 should be forfeited, and payable to each of the five Debtors named herein.[12]***

13. <u>Damages: 11 U.S.C. § 110(i)(1).</u> Third, section 110(i)(1) provides that, if a bankruptcy petition preparer violates Section 110 or commits any act that the bankruptcy court finds to be fraudulent, unfair, or deceptive, the court—***on motion of the debtor, trustee, United States Trustee***, and after notice and a hearing—shall order the bankruptcy petition preparer to pay the debtor: (a) her actual damages; (b) the greater of $2,000 or twice the amount paid by the debtor to the bankruptcy petition preparer; and (c) reasonable attorney's fees and costs in moving for damages. The court concludes that this particular provision of section 110 should not be applied here, since no motion was filed by the debtor, trustee, or United States Trustee seeking these types of damages.

14. <u>Fines: 11 U.S.C. § 110(l)(1).</u> Additionally, section 110(l)(1) provides that a bankruptcy petition preparer who fails to comply with any provision of subsection (b), (c), (d), (e),

---

[12] *See* footnotes 2-5, *supra*.

(f), (g) or (h) of Section 110 may be fined not more than $500 for each violation. The court shall triple the amount of a fine assessed in any case in which the court finds certain facts or circumstances. One fact that warrants trebling the fine is when the bankruptcy petition preparer "prepared a document for filing in a manner that failed to disclose the identity of the bankruptcy petition preparer." 11 U.S.C. § 110(l)(2)(D). Subsection (3) of section 110(l) states that "A debtor, trustee, creditor, or United States Trustee" may file a motion for an order imposing a fine on the bankruptcy petition preparer for any violation of section 110. 11 U.S.C. § 110(l)(3). Most of the reported cases that have involved imposing fines on bankruptcy petition preparers pursuant to this statute have arisen in the context of a party filing a motion seeking fines. However, certain courts have interpreted section 110(l)(1) as giving courts the discretion, on their own, to fine a bankruptcy petition preparer for violations of section 110, so long as each fine not exceed $500 for each violation of the statute.[13] This court concludes that it should **fine Wanda Harlan $100 for each of**

---

[13] *See In re Hennerman*, 351 B.R. 143, 157 (Bankr. D. Colo. 2006) (the court imposed fines against the bankruptcy petition preparer in favor of the United States Trustee program despite the fact that the hearing arose *sua sponte* and there was no motion for the imposition of fines or sanctions; court awarded $9,000 for six violations of section 110, specifically awarding $500 per violation, which was then tripled because of the bankruptcy petition preparer's intent to conceal his identity). *See also In re Springs*, 358 B.R. 236, 247 (Bankr. M.D.N.C. 2006) (court imposed fines of $1,365, based on thirteen section 110 violations, in a show cause hearing).

*the five cases in which she acted as a Bankruptcy Petition*
*Preparer without disclosing her identity, and because of the mere*
*fact that she did not disclose her identity, this court is*
*required to triple each fine, making the fine $300 per case,*
*which aggregates to $1,500.*  Wanda Harlan shall pay such fine to
the United States Trustee, who shall deposit the amount in the
United States Trustee Fund.  11 U.S.C. § 110(l)(4).

    15.  Civil Actions/Injunctions:  11 U.S.C. § 110(j).
Additionally, section 110(j) contemplates that a debtor, trustee,
creditor, or the United States Trustee may bring a civil action
to enjoin a bankruptcy petition preparer from further acting as a
bankruptcy petition preparer.  Similar to the situation with
fines (discussed above), certain courts have interpreted section
110(j) as giving courts the discretion, on their own, to enjoin
bankruptcy petition preparer behavior where there have been
violations of section 110.[14]  In the situation at bar, this court

---

[14] *Demos v. Brown (In re Graves)*, 279 B.R. 266, 273-74 (B.A.P. 9th
Cir. 2002)(court relied on Bankruptcy Code section 105(a) as authority
to issue an injunction, since it entitles a bankruptcy court to, *sua
sponte*, take any action "necessary or appropriate to enforce or
implement court orders or rules, or to prevent an abuse of process";
"[t]he fact that Congress gave statutory standing to debtors,
creditors, trustees, and U.S. trustees does not ... preclude the
bankruptcy court from raising the § 110(j) injunction issue by way of
an order to show cause"; the court further opined that a "bankruptcy
court acting on its own motion in a matter that ordinarily requires an
adversary proceeding must, in deference to principles of due process,
assure that the defendant is afforded the procedural protections that
inhere in an adversary proceeding because the rules of procedure
generally define what process is due"); *In re Moore*, 290 B.R. 287,
291-93 (Bankr. E.D.N.C. 2003) (addressing the court's authority to
issue an injunction absent the commencement of an adversary proceeding

concludes that there is ample cause to enjoin Wanda Harlan from engaging in bankruptcy petition preparer activity in violation of section 110 in the future and that Wanda Harlan has received reasonable notice that this consequence might result. Specifically, this court issued its Show Cause Order on March 30, 2012 (31 days before the hearing scheduled in this matter). The Bankruptcy Clerk, at the court's direction, served the Show Cause Order on Wanda Harlan and she appeared at the Show Cause Hearing with a lawyer. The Show Cause Order was seven pages long and detailed the court's concerns. The Show Cause Order cited section 110 and that the purpose of the May 1, 2012 Show Cause Hearing would be to explore whether Wanda Harlan had violated that Code section. This court concludes it should and will

---

by one of the parties identified in 110(j), court stated that the use of the word "may" in 110(j) is significant and adopts rationale provided in *In re Graves); In re Springs*, 358 B.R. 236, 247 (Bankr. M.D.N.C. 2006)(court granted injunctive relief to bar a bankruptcy petition preparer from engaging in further conduct in violation of section 110, noting that since its show cause order specifically addressed injunctive relief and provided 40 days notice of the hearing, there was no due process concern); *In re Graham*, No. 02-81930C-7D, 2004 WL 1052963, at *12-13 (Bankr. M.D.N.C. Feb. 13, 2004), *aff'd sub nom. Anderson v. West*, No. 1:04CV0796, 2005 WL 1719934, at *1 (M.D.N.C. Apr. 14, 2005) (adopting the reasoning of lower court that court is not precluded from granting injunctive relief by virtue of language in section 110(j) which gives statutory standing to certain parties to seek an injunction); *see also Scott v. U.S. Trustee (In re Doser)*, 292 B.R. 652, 659 (D. Idaho 2003), *aff'd*, 412 F.3d 1056 (9th Cir. 2005) (although the court did not discuss or impose an injunction in this case, it detailed the *Graves* case and adopted its rationale for the court to raise *sua sponte* a bankruptcy petition preparer's compliance with the Code). *But see Fulton v. McVay*, 318 B.R. 546, 555 (D. Colo. 2004) (disagreeing with the *Moore* case cited hereinabove).
.

enjoin Wanda Harlan from acting as a bankruptcy petition preparer
in this District, temporarily, unless and until she requests a
hearing and demonstrates to the court that she should be relieved
of the restriction in this Order.

16.  <u>Injunction as Part of the Court's Contempt Power:  11
U.S.C. § 110(j)(3).</u>  Additionally, the bankruptcy court, as part
of its contempt power, may issue an injunction pertaining to a
bankruptcy petition preparer **_on its own motion_** (or on motion of
the trustee or United States Trustee) **_if the bankruptcy petition
preparer fails to comply_** with a previous order issued under
section 110.  If Wanda Harlan does not comply with this Order,
this bankruptcy court will issue further appropriate orders.

**D.   In Summary, Consequences, at this Juncture, for Wanda
Harlan's Acting as a Bankruptcy Petition Preparer
without Complying with Section 110.**

17.  As set forth above, Wanda Harlan failed to comply with
at least section 110(b)(1) and (2), (c), (e)(2), and (h)(2) with
regard to all five debtors she assisted, including Ms. Cash.
Thus, this court concludes that all the fees charged to her five
clients should be forfeited, pursuant to section 110(h)(3)(B).
This would be $500 related to Ms. Cash and $500 related to three
other debtors (Pauline Davis, Verna Black, and Hung Truong) and
$400 for one other debtor (the Spratts).  **_In other words, $2,400
should be forfeited to the debtors named in this opinion._**  The
court also concludes that Wanda Harlan should be fined $100 per

-26-

case (which shall be trebled to $300 per case), for an aggregate
of $1,500, for failure to disclose her identity as a bankruptcy
petition preparer, pursuant to section 110(l). Wanda Harlan
shall pay this *$1,500 fine* to the United States Trustee, who
shall deposit the amount in the United States Trustee Fund. 11
U.S.C. § 110(l)(4). Finally, Wanda Harlan is hereby enjoined
from acting as a bankruptcy petition preparer in this District,
temporarily, unless and until she requests a hearing and
demonstrates to the court that she should be relieved of the
restriction in this Order. This is all without prejudice to the
debtors', trustee's, United States Trustee's, or creditors'
rights to seek damages pursuant to other provisions of section
110. In the event that Wanda Harlan does not forfeit the $2,400
of fees she has collected as a bankruptcy petition preparer, and
does not pay the $1,500 fine as described herein, the court will
issue subsequent orders as part of its contempt powers.

**E.  Attorney Steve Tiemann Has Largely Mooted the
     Consequences of His Actions.**

       18.  As noted earlier, Steve Tiemann surrendered his law
license eight days after the Show Cause Hearing. Thus, any
disciplinary action this court or any other tribunal would be
inclined to take regarding the matters set forth herein are
mostly moot. Had he not surrendered his law license, there would
be numerous problematic issues to discuss here. The court
believes, based on the totality of the evidence, that Steve

Tiemann knowingly and deliberately participated in a strategy whereby: (a) clients would be advised to file bankruptcy for the sole purpose of temporarily delaying eviction; (b) Steve Tiemann would defer (actually completely abdicate responsibility) to a non-lawyer bankruptcy petition preparer, Wanda Harlan (who was not complying with section 110) to prepare without supervision all of the bankruptcy paperwork and interact with the clients with regard to the bankruptcy work; and (c) if things went awry in the bankruptcy case—well so be it—because the case filing was *simply about delay* until Steve Tiemann could file an action in the state court to attempt to unwind a foreclosure sale that had long-since concluded.

19. Among other things, Rule 5.05(b) of the Texas Disciplinary Rules of Professional Conduct provides that a lawyer shall not assist a person who is not a member of the bar in the performance of activity that constitutes the unauthorized practice of law. Steve Tiemann was essentially—by abdicating all responsibility for bankruptcy paperwork to Wanda Harlan—assisting Wanda Harlan to participate in the unauthorized practice of law.[15] Rule 8.04 of the Texas Disciplinary Rules of Professional

---

[15] Comment 4 to Rule 5.05 states that "So long as the lawyer supervises the delegated work, and retains responsibility for the work, and maintains a direct relationship with the client, the paraprofessional cannot reasonably be said to have engaged in activity that constitutes the unauthorized practice of law." As discussed herein, the court finds and concludes, based on the totality of the credible evidence, that Steve Tiemann did not supervise Wanda Harlan, did not retain responsibility for her work, and did not maintain the

Conduct (entitled "Misconduct") also prohibits a lawyer from, among other things, engaging in conduct involving dishonesty, fraud, deceit or misrepresentation (at subsection (a)(3)). Also, Rule 3.01 of the Texas Disciplinary Rules of Professional Conduct (entitled "Meritorious Claims and Contentions") states that a "lawyer shall not bring or defend a proceeding . . .unless the lawyer reasonably believes that there is a basis for doing so that is not frivolous" and the Comments thereto provide that a lawyer has "a duty not to abuse legal procedure." Steve Tiemann, in this court's estimation, violated both Rule 8.04 and Rule 3.01 by instructing clients to file a bankruptcy case, merely to delay eviction, while he prepared state court lawsuits to attempt to set aside wrongful foreclosures many months after the foreclosures had occurred and legal remedies likely exhausted. The obvious strategy was to "buy time." There was never a serious desire to pursue a rehabilitation plan in Chapter 13. This is not proper, professional behavior. It is an abuse of the system and not a good faith effort at legal problem solving.

20. As mentioned, Steve Tiemann has surrendered his law license. But as a precautionary measure, this court will both: (a) send a copy of this Order to the State Bar of Texas; and (b) bar Steve Tiemann from filing a bankruptcy case or assisting a

---

direct relationship with the clients with regard to the bankruptcy paperwork. He never signed (much less reviewed) the paperwork.

client in a bankruptcy case in this District in the future without permission from one of the judges of this court.

**F.   Ameridream Educational Concepts**

21.   What is Ameridream doing? What are they charging people money for?  Ordinarily, this court would issue a Show Cause Order directing them to appear and explain themselves.

22.   This court has subsequently learned that (between taking this matter under advisement and issuing this Order and Opinion) Bankruptcy Judge Harlin Hale has issued an Order declaring that Cedric L. Brown and Ameridream Educational Concepts, LLC, have violated section 110 in certain cases pending before Judge Hale and has ordered them to forfeit fees and has permanently enjoined them from acting as Bankruptcy Petition Preparers.  *See* Order dated February 19, 2013, in *In re James Blackshire*, Case No. 12-33744-hdh (Chapter 13).  Thus, this court will simply defer to Judge Hale and that Order and not open separate proceedings regarding Cedric L. Brown and Ameridream Educational Concepts, LLC, at this time.

**IV.   CONCLUSION AND ORDER:  THERE IS NO SUCH THING AS A "FREE LUNCH" AND THERE IS NO SUCH THING AS A "FREE HOUSE."**

The matters described herein are all very disturbing.  This court is concerned, among other things, that there are people in our community "hanging out a shingle" (so to speak), representing that they can and will perform services that they are not at all

qualified to perform. These offered services may range from "buying a person indefinite free time" in their long-ago foreclosed upon house, to getting people a "free house." Paraphrasing a line that the famous free-market economist Milton Friedman once made popular, "there is no free house."[16] While there are certainly situations where abuses have occurred with regard to foreclosure, every situation is different (not every foreclosure is flawed) and one's remedies are not infinite. The court fears that people in our community are frequently going to unqualified people for help, are being fed false hope, and are paying money that is far better spent on experienced lawyers or directly to creditors. Sometimes these victims themselves are not very sympathetic. Specifically, they may have been living in a "free house" for many months or even years and do not really have any legally defensible position. Perhaps these people even went to experienced lawyers first, and were candidly told that. Other times, the home owners are quite sympathetic and simply went to the wrong place for help.

In any event, it is all a terrible "drain on the system" and downright unethical.[17] It is a game of delay. And problems are

---

[16] Milton Friedman, of course, stated that there is no such thing as a "free lunch." MILTON FRIEDMAN, THERE'S NO SUCH THING AS A FREE LUNCH (Open Court Publishing Co., 1975).

[17] Specifically, a drain on the court system, a drain on the United States Trustee system, a drain on the housing industry, and a drain on the economy.

not getting solved.

Accordingly, it is hereby

**ORDERED** that Wanda Harlan shall forfeit all the fees charged to her five clients, pursuant to section 110(h)(3)(B). This would be $500 forfeited to Ms. Cash (really, Ms. Holland, on Ms. Cash's behalf); $500 forfeited to Pauline Davis; $500 forfeited to Verna Black; $500 forfeited to Hung Truong; and $400 forfeited to Lorenzo and Gwendolyn Spratt (with all amounts payable to the clients).[18] ***In other words, $2,400 should be forfeited to the debtors named in this opinion.*** This shall be payable fifteen (15) days after entry of this Memorandum Opinion and Order. It is further

**ORDERED** that Wanda Harlan shall be fined $100 per case (which shall be trebled to $300 per case), for an aggregate of $1,500, for failure to disclose her identity as a bankruptcy petition preparer, pursuant to section 110(l). Wanda Harlan shall pay this ***$1,500 fine*** to United States Trustee, who shall deposit the amount in the United States Trustee Fund. 11 U.S.C. § 110(l)(4). This shall be payable fifteen (15) days after entry of this Memorandum Opinion and Order. It is further

**ORDERED** that Wanda Harlan is hereby enjoined from acting as a bankruptcy petition preparer in this District, temporarily,

---

[18] *See* footnotes 2-5, *supra*.

unless and until she requests a hearing and demonstrates to the court that she should be relieved of this restriction. It is further

**ORDERED** that Attorney Steve Tiemman shall be barred from filing a bankruptcy case or assisting a client in a bankruptcy case in this District in the future without permission from one of the judges of this court. It is further

**ORDERED** that Wanda Harlan shall file a Notice with this court within sixteen (16) days after the entry of this Memorandum Opinion and Order certifying her compliance with this Order and providing proof of her forfeiture of the fees set forth herein and her payment of the fines set forth herein. It is further

**ORDERED** that the Clerk shall serve a copy of this Order, via first class U.S. Mail, to the following:

(1) State Bar of Texas, Office of Chief Disciplinary Counsel, 14651 Dallas Parkway, Suite 925, Dallas, TX 75254;

(2) Steven W. Tiemann, 2000 E. Lamar Blvd., Suite 600, Arlington, TX 76006-7361;

(3) Wanda Harlan, 2817 Marburg, Dallas, TX 75215;

(4) Jatiquia Cash, 138 Horseshoe Bend, Waxahachie, TX 75165;

(5) Pauline Davis, 1416 Singing Bird Dr., Lancaster, TX 75134;

(6) Verna Black, 1212 Paul Dr., Cedar Hill, TX 75104;

(7)  Lorenzo and Gwendolyn Spratt, 905 Beverly Circle, Cedar Hill, TX 75104;

(8)  Hung Vu Truong, 3717 Goose Creek Parkway, Garland, TX 75040;

(9)  Thomas Powers, Standing Chapter 13 Trustee, 125 E. John Carpenter Frwy., Suite 1100, Irving, TX 75062-2288; and

(10) Nancy Resnick, Office of the U.S. Trustee, 1100 Commerce St., Room 976, Dallas, TX 75242.

###END OF MEMORANDUM OPINION AND ORDER###